# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. A-99-CR-215 JRN |
| | § | |
| ROBERT E. DUNCAN | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE JAMES R. NOWLIN
         SENIOR UNITED STATES DISTRICT JUDGE

Before the Court is the Government's Petition for Offender Under Supervision (Clerk's Doc. No. 58), and the Defendant's Motion for Unconditional Discharge and Alternative Request for a Modification of his Conditional Discharge (Clerk's Doc. No. 65), both referred to the undersigned by Judge Nowlin for recommendation. The undersigned submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b), FED. R. CIV. P. 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I. BACKGROUND

On October 6, 1999, United States District Judge James R. Nowlin found the Movant not guilty by reason of insanity with regard to an underlying charge of making a threat to the life of the President in violation of 18 U.S.C. § 871. Following this finding of not guilty by reason of insanity, Judge Nowlin ordered the Defendant remanded to the custody of the Attorney General, pursuant to 18 U.S.C. § 4243(e). On June 1, 2001, based on a certification of the Defendant's improved mental condition and suitability for release, Judge Nowlin entered an order of conditional release, allowing the Defendant to leave federal custody and move into the Mariposa Guest House in Los Angeles,

California. Several months later, as a result of the Defendant's refusal to take his medications, his verbal abuse of staff members attempting to convince him to take his medication, and his disconnecting the home's fire alarm, on November 29, 2001, the Government requested a warrant for Mr. Duncan. The Court issued such a warrant, and Duncan was taken back into custody for a hearing on the Government's petition that his conditional release be revoked. On December 18, 2001, Judge Nowlin revoked the conditional release, and directed that Duncan be placed in the Federal Medical Center in Springfield, Missouri.

A little more than a year later, on January 14, 2003, Mr. Duncan was again conditionally released, this time into the Cedar Vale Nursing Center in Cedar Vale, Kansas. Things did not go well there, however, as Mr. Duncan left the facility without permission, threatened staff when directed to bathe (after not doing so for 2 weeks), and was subsequently arrested for disorderly conduct. Thus, on March 25, 2003, Mr. Duncan was again arrested, and after a hearing was again ordered committed to the Federal Medical Center in Springfield.

After a two year period in FMC Springfield, on June 10, 2005, Mr. Duncan was again conditionally released, this time to the Meadow Brook Residential Care Facility in Howe, Oklahoma. Apparently all went fairly well with Mr. Duncan for over a year, until June 30, 2006, when he had a disagreement with another resident at Meadow Brook. That disagreement resulted in the arrest of Mr. Duncan for assault (based on his grabbing and perhaps hitting the torso of a female resident), and also his discharge from Meadow Brook. Because of his arrest and discharge from the facility, a Petition for Warrant was filed, and the Mr. Duncan was once again taken into federal custody. After a psychological evaluation, on August 24, 2006, the undersigned held a hearing on the Government's petition, and recommended that Duncan be allowed to remain on conditional release

in a residential facility that would meet his needs. Because no such facility had been located at the time of the hearing, the Court ordered Mr. Duncan be placed in the custody of FMC Springfield until a suitable facility was located. In reaching this conclusion, the Court explained that:

> the Defendant has not failed to comply with his treatment regimen. His main problem appears to be his ability to remain in group homes, as he has been discharged from several because of his acting out. While the Defendant is in technical violation of his release conditions, it would appear that he remains a good candidate for conditional release if an appropriate residential facility can be located for him. The Court sees no evidence that the Defendant's continued release would pose a substantial risk of bodily injury to another person or serious damage to the property of another.

Report & Recommendation (Clerk's Doc. No. 51). Consistent with this, on February 26, 2007, Mr. Duncan's conditional release was reinstated, and he was readmitted to the Meadow Brook facility.

Mr. Duncan remained at the Meadow Brook facility for four-and-a-half years, through September 14, 2011, the longest period of time he had gone without a violation since his initial arrest. On that date Mr. Duncan was transferred to a sister facility, the Sequoyah Residential Facility, due to behavioral problems he was beginning to have at Meadow Brook, and based on Sequoyah's ability to provide him with enhanced care. However, on February 29, 2012, the undersigned issued a warrant for Mr. Duncan's arrest, because the Sequoyah facility was no longer willing to have Mr. Duncan as a resident, as he was refusing to participate in classes, was only minimally or partially compliant with his medications, and was getting involved in arguments with fellow residents, one of which resulted in some sort of minor physical altercation.

Mr. Duncan was thus taken back into custody on March 1, 2012, and after being transported to Austin, his appointed counsel filed the Motion for Unconditional Discharge. Before setting a hearing on the Government's Petition and Duncan's Motion, the Court directed that a forensic psychiatric evaluation be conducted by Dr. Robert Cantu. Clerk's Doc. No. 67. That report was

3

completed and filed with the Court on April 23, 2012. The Court then held a hearing on all matters on May 1, 2012.

## II. **DISCUSSION**

The question before the Court is whether Mr. Duncan's conditional release should be revoked or modified in some fashion, or whether he should be unconditionally discharged from any supervision.

**A.     Statutory Standard**

Under § 4243(f), the court, after a hearing, may order the discharge of a person found not guilty by reason of insanity if the court finds that the person's release would not create a "substantial risk" of bodily injury to another person or serious damage to property of another due to a present mental disease or defect. *See* 18 U.S.C. § 4243(f). The person found not guilty by reason of insanity has the burden of proving that no such substantial risk exists by either clear and convincing evidence or by a preponderance of the evidence, depending upon the nature of the crime of which the person was acquitted. *See* 18 U.S.C. § 4243(d). The Tenth Circuit, the only circuit court to directly address the evidentiary standard regarding the crime with which Movant was originally charged, has held that a person found not guilty by reason of insanity of the crime of making a threat against the President of the United States must demonstrate by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage to property of another. *United States v. Gilgert*, 314 F.3d 506, 513-16 (10th Cir. 2002).

**B.     Application of Statutory Standard**

The most relevant psychiatric evidence is that contained within the report and testimony of Dr. Robert Cantu, as it is the most recent. Dr. Cantu's report and testimony covered several topics,

but that most relevant here is his opinion regarding whether Duncan would pose a substantial risk of bodily injury to another person, or serious damage to the property of another if he were released without any supervision. Dr. Cantu testified that it was likely that if released without supervision, Mr. Duncan would at some point stop taking his medication. This, he stated, would then lead to Duncan experiencing psychosis. However, as reflected in his report, he is his opinion that:

> even if [Duncan's] noncompliance [with his medication regimen] did lead to psychosis, I still believe his level of risk would fall below "substantial" for the following reasons:
>
> 1) The available history finds that Mr. Duncan's hallucinosis and paranoia characteristically manifests itself in threats, not action.
> 2) His most recent "history" of verbal aggression and oppositionality is not psychotically or paranoid driven. It is primarily personality driven, against the "institution."

Report of Robert E. Cantu, M.D. at 2-3. The Government offered no controverting medical evidence or testimony.

Further, Mr. Duncan is 66 years old. His appearance is that of a frail, elderly man. He has an extensive history of mental illness, tracing back to his adolescence. His first psychiatric hospitalization took place when he was 17, and he has been hospitalized in the Austin State Hospital at least 15 times. Since 1999, as set forth above, he has been in federal medical facilities at least three times. In all of this time, the only violent actions recorded in the records available to the court were the two minor altercations that took place in the Meadow Brook facility and the Sequoyah facility, respectively. Neither resulted in any criminal charges or convictions. As Dr. Cantu explained, when Mr. Duncan has experienced auditory or visual hallucinations in the past, he has not acted in accordance with those, but rather has sought help in making the voices "stop." He is thus unlikely to be led to violence even if he is unmedicated.

5

In applying the "substantial risk" standard of § 4241 (which concerns competency to stand trial but contains an identical standard to § 4243(f)), a Louisiana District Court found it proper to release a man suffering from permanent mental retardation on the grounds that, according to hospital findings, the man had only a 10% likelihood of committing another offense within the next 10 years. *United States v. Duhon*, 104 F.Supp.2d 663, 668 (W.D.La. 2000). As Duncan has caused no bodily injuries or damage to property since at least 1999, he would appear to be at least as unlikely to commit an offense as the defendant in *Duhon*. As such, I conclude that he has shown by clear and convincing evidence that he does not pose a *substantial* risk of bodily injury to another person or serious damage to property of another due to a present mental disease or defect if he were unconditionally released under § 4243(f).

C.    **Arguments For and Against Continued Confinement**

The main argument for Duncan's continued confinement revolves not around any substantial risk of bodily injury or property damage, but rather focuses on the severity of his mental illness and the difficulties he would likely face upon release. Duncan is unlikely to be fully functional outside of a structured facility. Even when his medication is operating at optimal levels, his symptoms never entirely disappear. He also suffers from cognitive deficits. He is likely to experience difficulty in coping with the demands of normal everyday life, and these problems will be heightened by his unwillingness to take medication. Furthermore, the lack of a stable residence upon release could impair his ability to receive potentially helpful support with his daily existence.

But while Duncan's existence outside of an institution would no doubt be a challenging one, that cannot be used to keep a person incarcerated under § 4243. Rather, under that statute, a person's mental illness must create a *substantial risk* of danger in order to justify continued confinement. *See*

6

18 U.S.C. § 4243(f). The Supreme Court, in determining the constitutionality of state statutes providing for the incarceration of mentally ill patients found not guilty by reason of insanity, has held that "as a matter of due process it [is] unconstitutional for a state to continue to confine a harmless, mentally ill person." *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992) (citing *O'Connor v. Donaldson*, 422 U.S. 563 (1975)). As a result, "the committed acquittee is entitled to release when he has recovered his sanity *or* is no longer dangerous." *Id.* (quoting *Jones v. U.S.*, 463 U.S. 354, 368 (1983)) (emphasis added) (internal quotation marks omitted). According to both the statutory standard of § 4243 and the Supreme Court's interpretation of due process rights, then, Duncan cannot be held based on his mental illness absent a finding of dangerousness.

Duncan's right to personal liberty also plays a role in determining whether to continue his confinement. An individual's liberty interest has been considered fundamental from the first days of this nation, as demonstrated by the guarantees of liberty found in both the Declaration of Independence and the Fifth Amendment to the Constitution. While any denial of liberty is a serious one, confinement is the most serious of all – "commitment for any purpose constitutes a significant deprivation of liberty." *Jones v. U.S.*, 463 U.S. 354, 361 (1983). According to Justice George Sutherland, "[t]o give a man his life but deny him his liberty is to take from him all that makes life worth living." The altruistic impulses of the government, no matter how well intended, cannot alone override the liberty interests of the committed person seeking freedom. *See O'Connor v. Donaldson*, 422 U.S. 563 (1975).

**D.**     **Discharge vs. Conditional Release**

While Duncan undeniably suffers from a serious mental illness, his only incidents of physical violence in the last 15 years have been very minor. Even during times when he was not on

medication, such as when he was initially arrested in this case, he was not violent. Further, when he has experienced periods of severe psychosis in the past, he has sought out medical help, albeit at times in an unconventional manner, as he did when he first came to the attention of federal law enforcement agents in this case.

Due to the lack of a substantial risk that Duncan would be dangerous if discharged, imposing conditions upon release would likely be counterproductive. While it is certainly foreseeable (indeed, probable) that Duncan will stop taking his medication at some point in the future, conditioning his release upon adherence to a program of medication (and then revoking that release when he fails to follow the program) would lead only to a continuation of the cycle of custody Duncan has experienced since 1999. It is not irrelevant to this analysis that the maximum sentence Duncan could have received if found guilty of the instant offense was five years in prison. It is not the role of the federal criminal justice system to provide social services to mentally ill citizens; indeed, the system is ill-suited to provide that care. For example, the only alternative available to the Court when a releasee violates house rules and is asked to leave a group home (as in this case) is to imprison them, at a huge cost to the individual's liberty, and to the government's pocketbook. And while the probation office has many resources at its disposal, and the FCCs and FMCs are staffed by very able professionals, the criminal justice system's primary role is to punish law breakers, rehabilitate them, and protect the public from them. That is why the statute provides for discharge when a person has recovered sufficiently such that he no longer poses a substantial risk of danger to the public.

### III. RECOMMENDATION

For all of the reasons set forth above, the undersigned is of the opinion that discharge under § 4243(f) constitutes the proper course of action in this case. ACCORDINGLY, the Court

RECOMMENDS that Defendant's Motion for Unconditional Discharge (Clerk's Doc. No. 65) be GRANTED, the Government's Petition seeking revocation (Clerk's Doc. No. 58) be DENIED, and the Defendant be discharged under 18 U.S.C. § 4243(f).

## IV. **WARNINGS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996). To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of May, 2012.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE